**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ESTHER TWOHILL,** | ) | |
| Individually and on Behalf of | ) | |
| All Others Similarly Situated, | ) | JURY DEMAND |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case no.: |
| | ) | |
| **FIRST ACCEPTANCE CORPORATION** | ) | |
| **and FIRST ACCEPTANCE** | ) | |
| **INSURANCE COMPANY, INC.** | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**
Collective Action under §216(b) of FLSA

Plaintiff Esther Twohill, on behalf of herself, and all others similarly situated, by and through counsel, for her Complaint against Defendants First Acceptance Insurance Company, Inc. and First Acceptance Corporation ("Defendants") states as follows:

**PRELIMINARY STATEMENT**

1. This is a collective action filed under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, ("FLSA" of "Fair Labor Standards Act").

2. Congress enacted the Fair Labor Standards Act to eliminate low wages and long work hours, which it deemed detrimental to the health and wellbeing of workers. In that pursuit, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and

one-half times the regular rate at which he is employed." *Walling v. Helmerish & Payne,* 323 U.S. 37, 40 (1944).

3. Plaintiff Esther Twohill, and others similarly situated, worked as insurance agents ("Agents") for Defendants at any time during the last three years up through May 1, 2016 ("Relevant Period"). Plaintiff Twohill, and other similarly-situated Agents, performed non-manual, clerical tasks for which Defendants paid them a fixed, bi-weekly amount for 80 hours of work, regardless of whether these employees worked overtime.

4. Defendant violated the FLSA when they failed to pay Plaintiff Twohill, and other similarly situated Agents, at time and one-half their regular rates of pay for all hours worked within a workweek in excess of 40 hours. Plaintiffs seek payment for unpaid overtime work and liquidated damages as compensation for Defendants' Fair Labor Standards Act violations.

5. The FLSA provides for a private right of action to recover damages for violations of the Act's overtime provisions. 29 U.S.C. § 216(b). Moreover, pursuant to § 216(b), "An action to recover the liability prescribed in [§§ 206 or 207] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.*

6. A district court may certify a case as a collective action if members of the class are "similarly situated" or raise similar legal issues regarding coverage, exemption, or nonpayment of wages or benefits. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-71 (1989).

7. This Court has federal-question jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because Defendant First Acceptance Corporation and Defendant First Acceptance Insurance Company, Inc. each have their principal place of business in Nashville, Davidson County, Tennessee, and the unlawful pay practices alleged in this Complaint occurred in Davidson County, Tennessee.

## THE PARTIES

9. Defendant First Acceptance Corporation ("FAC") is a retailer, servicer, and underwriter of non-standard personal automobile insurance. FAC currently writes insurance in 17 states, including Tennessee. FAC issues policies as a licensed insurer in 13 of these 17 states and is licensed as an insurer in a total of 25 states.

10. FAC owns and operates three insurance company subsidiaries, organized and domiciled under the insurance statutes of Texas, Georgia and Tennessee: First Acceptance Insurance Company, Inc. ("FAIC"); Acceptance Insurance Agency of Tennessee, Inc. ("AIA-TN"); and First Acceptance Insurance Company of Tennessee, Inc. ("FAIC-TN").

11. Presently, FAC leases and operates approximately 369 retail locations in 16 states staffed with employee-agents. FAC's employee-agents exclusively provide customers with insurance products either underwritten or serviced by FAC.

12. Plaintiff Twohill and all others similarly situated are current or former employees of Defendants FAC and/or FAIC, who worked as insurance agents, regardless of actual title, at any time during the last three years up through May 1, 2016 (the "Class" or "Class Members").

13. Plaintiff Twohill and the Class are/were employees within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203(e)(1). Plaintiff Twohill's written consent to sue is attached as Exhibit 1.

14. Defendants are employers within the meaning of 29 U.S.C. §203(d) of the Fair Labor Standards Act.

15. Defendants constitute an enterprise or enterprises engaged in commerce within the meaning of the Fair Labor Standards Act 29 U.S.C. §203(e)(1).

16. Defendants earned more than $500,000.00 in annual revenue in each year of the Relevant Period.

17. Plaintiff Twohill and the Class are/were engaged in interstate commerce, the production of goods for interstate commerce, or an activity closely related and directly essential to the production of such goods in each workweek of their employment with Defendants during the Relevant Period.

## FACTUAL ALLEGATIONS

18. Plaintiff Twohill and the Class worked as insurance agents ("Agents") for Defendants during part or all of the Relevant Period.

19. During the Relevant Period, the Class Members, including Plaintiff Twohill, were not paid overtime premiums for hours worked in excess of 40 per workweek.

20. Plaintiff's paystubs during the Relevant Period reflect a pay rate of $11.54 per hour.

21. Plaintiff's paystubs during the Relevant Period reflect that she worked a total of 80 hours each two-week pay period.

22. Regardless of how many overtime hours Plaintiff worked during each pay period in the Relevant Period, her pay stubs reflected only 80 hours of work, paid at a rate of $11.54 per hour.

23. During the Relevant Period, Plaintiff's and Class Member's scheduled office hours were 9:00 am to 6:00 pm, Monday through Friday, and from 10:00 am to 2:00 pm on Saturday.

24. During "Tax Season," all Defendants' offices extended their operating hours from 9:00 am to 7:00 pm on Fridays, and from 10:00 am to 5:00 pm on Saturdays. Ultimately, Defendant continued the extended Saturday hours beyond just the "Tax Season."

25. Plaintiff and the Class Members were each paid the same amount of $923.08 each two-week pay period for 80 hours of work.

26. Plaintiff and the Class Members normally and routinely worked in excess of 40 hours in any given workweek.

27. Plaintiff and the Class Members normally and routinely worked in excess of 80 hours in each two-week pay period.

28. During the Relevant Period, Defendants did not pay Plaintiff and the Class Members one-and-one-half times their regular hourly rate for any hours worked in excess of 40 in any workweek.

29. During the Relevant Period, Defendants did not pay Plaintiff and the Class Members any wages for hours worked over 40 in any workweek.

30. As Agents, Plaintiff Twohill and the Class Members did not have the authority to hire, fire, or reprimand any of Defendants' other employees.

31. During the Relevant Period, Defendants also hired and employed individuals to serve as Customer Service Representatives (CSR) at each of its office locations.

32. Defendants' CSRs performed the same job duties as Agents, including Plaintiff and the Class Members.

33. Defendants' CSRs were not typically allowed to work in excess of 40 hours in a workweek.

34. If a CSR worked in excess of 40 hours in a given workweek, Defendants paid them overtime premiums equal to one-and-one-half times their regular hourly rate for each hour worked over 40 in that workweek.

35. During the Relevant Period, the job duties of Defendants Agents (and CSRs) included gathering information from applicants—such as the applicant's name, address, date of birth, social security number, and other basic information—necessary to quote and write insurance policies.

36. Defendant's insurance application questions were standardized and identical for each applicant.

37. The applicant's information would then be entered into Defendants' computer system, which would generate a quote along with premium prices for that customer.

38. During the Relevant Period, Agents could not, and had no discretion to, determine which customers qualified for any type of insurance coverage.

39. During the Relevant Period, Agents could not, and had no discretion to, alter the premium amount quoted or charged to any customer.

40. This premium was solely determined and generated by the Defendants' software program.

41. While Agents were required to "up sale" every customer with add-on products, they had no discretion as to whom they offered these add-on products. Rather, Defendants

required Agents to offer these add-on products to every customer regardless of whether the customer had a need or was a candidate for such products.

42. Defendants' company-wide job duties required of its Agents were specific, even formulaic, and provided no room for interpretation or variation through the exercise of discretion or independent judgment.

43. Defendants even employed District Managers and Regional Managers responsible for ensuring that each Agent adhered to Defendants' specifications in carrying out his/her job duties.

44. During the Relevant Period, a significant portion of each Agent's workday involved calling customers in an attempt to collect delinquent premium payments.

45. As Agents, Plaintiff and Class Members were only permitted to explain to customers how to make a claim under their policy, but they had no authority or discretion to decide whether any submitted claims were ultimately paid or denied.

46. As Agents, Plaintiff and Class Members did not have supervisory authority over, or responsibility for, any other employees.

47. As Agents, Plaintiff and Class Members lacked the authority to delegate any of their job duties to other employees.

48. As Agents, Plaintiffs and Class Members lacked the authority to handle or resolve employee grievances or complaints.

49. As Agents, Plaintiffs and Class Members lacked the authority to interpret, establish, or enforce Defendants' company policies, but were simply required to follow those policies as presented to them.

50. During the Relevant Period, Plaintiff and Class Members were required to report to work at Defendants' established office locations and did not, nor were they allowed to, perform any significant portion of their job duties outside their office locations.

51. During the Relevant Period, no Plaintiff or Class Member earned an annual salary of more than $100,000.00.

52. During the Relevant Period, Defendants considered Plaintiff and the Class Members "salaried" employees and therefore exempt from the FLSA's overtime provisions.

53. During the Relevant Period, however, Plaintiff and the Class Members were "non-exempt" employees, whose actual job duties entitled them to overtime pay under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

54. Plaintiff has actual knowledge that the Class Members have also been denied overtime pay for hours worked in excess of forty in a workweek during the Relevant Period.

55. During the Relevant Period, Defendants suffered, permitted, and/or required Plaintiff and Class Members to work in excess of forty hours per workweek for less than the federally mandated overtime rate.

56. During the Relevant Period, the Class Members performed the same or similar work as Plaintiff in the performance of their duties and provision of Defendants' services.

57. During the Relevant Period, Plaintiff and the Class Members regularly work or worked in excess of forty hours during a workweek.

58. As such, Class Members are similar to Plaintiff in terms of job duties, conditions of employment, and pay structure.

59. Class Members are similar to Plaintiff in that they were all denied overtime premiums when permitted or required to work over forty hours in a workweek.

60. Defendants' failure to pay overtime compensation at the rates required by the FLSA results from a single decision, policy, practice or plan, and does not depend on the personal circumstances of Plaintiff or any individual Class Member.

61. The specific or actual job titles of each Class Member do not prevent collective action treatment because their actual job duties and conditions of employment were similar.

62. All Class Members are entitled to overtime compensation under the FLSA for hours worked in excess of forty during a workweek while working for the Defendants during the Relevant Period.

63. During the Relevant Period, Defendants knew or should have known Plaintiff and the Class Members regularly worked in excess of forty hours during a workweek because, among other things, (i) Defendants set the office hours, including mandatory work days/hours; (ii) Defendants required the submission of Agent activity reports; (iii) insurance applications were submitted and tracked through Defendants' computer systems; (iv) and this overtime work was reported to Defendants at least as early as December 2013 when they were first sued for this same failure to pay Agents overtime premiums for hours worked over 40 in a workweek, as alleged in *Lykins et al. v. First Acceptance Corporation, et al.*, No. 3:13-CV-01374 (M.D. Tenn.).

64. Defendants' failure to pay FLSA-mandated overtime compensation to Plaintiff and the Class Members a willful violation because, among other things, (i) Defendants were aware of wage and hour laws, as evidenced by the fact that they provide overtime compensation to CSRs, who performed the same job duties as Plaintiff and the Class

Members; and (ii) despite being sued in 2013 for this same failure to pay Agents overtime premiums (*Lykins et al. v. First Acceptance Corporation, et al.*, No. 3:13-CV-01374 (M.D. Tenn.)), and despite ultimately settling that lawsuit in 2015, Defendants did not change their unlawful pay practice and begin paying overtime to their Agents, including Plaintiff, until May 1, 2016.

65. Plaintiff requests court approval to send notice of this lawsuit to the following class of similarly-situated individuals:

    All current or former employees of First Acceptance Corporation and/or First Acceptance Insurance Company, Inc., who worked as insurance agents, regardless of actual title, at any time during the last three years up through May 1, 2016.

66. There are numerous similarly situated, current and former employees of Defendants who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## COUNT I
### Collective Action under §216(b) of the FAIR LABOR STANDARDS ACT

67. Plaintiff hereby incorporates and re-alleges by reference the foregoing paragraphs of this Complaint into this count.

68. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

69. Plaintiff Twohill and the Class are entitled to be paid overtime compensation for all overtime hours worked.

70. Defendants, pursuant to their pay policies and practices, failed and refused to pay overtime premiums to Plaintiff Twohill and the Class for all of their overtime hours worked.

71. Defendants violated the FLSA, 29 U.S.C. § 201 *et seq.*, by failing to compensate Plaintiff Twohill and the Class for overtime compensation.

72. Plaintiff Twohill and the Class do not or did not perform job duties or tasks that permit them to be exempt from overtime compensation as required under the FLSA.

73. By failing to record, report, and/or preserve records of all hours worked by Plaintiff Twohill and the Class, Defendants failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq*.

74. The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

75. Plaintiff Twohill, on behalf of herself and the Class, seeks damages in the amount of all respective unpaid overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

76. Plaintiff Twohill, on behalf of herself and the Class seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**WHEREFORE,** Plaintiff, on behalf of herself and all members of the Class, pray for relief as follows:

A. Designation of this action as a collective action on behalf of the Class, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b);

B. A declaration that Defendants are financially responsible for notifying the FLSA Class of its alleged wage and hour violations;

C. Judgment against Defendants for an amount equal to Plaintiff's and the Class's unpaid overtime wages at the applicable rates;

D. A finding that Defendants' conduct was willful;

E. An equal amount to the unpaid overtime wages as liquidated damages;

F. All costs and attorneys' fees incurred prosecuting these claims, including expert fees;

G. Pre-judgment and post-judgment interest, as provided by law; and

H. Such further relief as the Court deems just and equitable.

### Demand for Jury Trial

Plaintiff, individually and behalf of all others similarly situated, hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully Submitted,

*/s/ Charles P. Yezbak, III*
Charles P. Yezbak, III (TN#18965)
**YEZBAK LAW OFFICES**
2002 Richard Jones Road, Suite B-200

Nashville, Tennessee 37215
(615) 250-2000
(615) 250-2020 Facsimile
yezbak@yezbaklaw.com


Rowdy B. Meeks, (KS#16068)
**ROWDY MEEKS LEGAL GROUP LLC**
10601 Mission Rd., Suite 100
Leawood, Kansas 66206
Tel:    (913) 766-5585
Fax:    (816) 875-5069
Rowdy.Meeks@rmlegalgroup.com
*Pro Hac Vice Motion Forthcoming*


Tracey F. George, (MO#52361)
**DAVIS GEORGE MOOK LLC**
1600 Genessee, Suite 328
Kansas City, Missouri 64102
Tel:    (816) 569-2629
Fax:    (816) 447-3939
tracey@dgmlawyers.com
*Pro Hac Vice Motion Forthcoming*


**Attorneys for Plaintiffs**