**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ESTHER TWOHILL,** | ) | |
| Individually and on Behalf of | ) | |
| All Others Similarly Situated, | ) | JURY DEMAND |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case no.: 3:17−cv−00284 |
| | ) | |
| **FIRST ACCEPTANCE CORPORATION** | ) | |
| **and FIRST ACCEPTANCE** | ) | Judge William L. Campbell, Jr. |
| **INSURANCE COMPANY, INC.** | ) | Magistrate Judge Jeffery |
| | ) | S. Frensley |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT
AGREEMENT, INCLUDING AWARD OF ATTORNEYS' FEES AND COSTS,
AND INTEGRATED MEMORANDUM IN SUPPORT**

---

Plaintiff Esther Twohill, on behalf of herself and others similarly situated, with the

consent of Defendants First Acceptance Corporation and First Acceptance Insurance

Company, Inc., moves this Court for an order approving the parties' FLSA Settlement

Agreement (attached as Exhibit 1), and approving as reasonable the Settlement

Agreement's proposed award of attorneys' fees and costs. Defendants do not oppose this motion. In support of this motion, Plaintiff states as follows:[1]

## I.    CASE BACKGROUND.

Plaintiff Twohill filed this federal Fair Labor Standards Act ("FLSA") collective action lawsuit on February 14, 2017, alleging that she and other insurance agents employed by Defendants were unlawfully denied overtime premiums pursuant to Defendants' unlawful misclassification of their position as FLSA "exempt." (ECF No. 1). Defendants filed their Answer, also asserting several affirmative defenses, on April 4, 2017. (ECF No. 12).

On July 17, 2017, Plaintiff moved for certification of a collective action pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA"). (ECF No. 24-25). Defendants filed their opposition to collective action certification on August 16, 2017. (ECF No. 29). The Court granted Plaintiff's collective action certification motion on February 28, 2018. (ECF No. 46). Plaintiff utilized a third-party administrator to send notice to the certified collective class of "All current or former insurance agents, regardless of actual title, who worked for Acceptance within the United States, and who were classified as "exempt" from overtime pay for at least one workweek, during the last three years." (Declaration of Tracey F. George, "George Decl.", attached as Exhibit 2, ¶ 4). A total of approximately 138

---

[1] Throughout this Motion, Plaintiff uses initial caps to reference terms defined in the Settlement Agreement (Ex. 1) and refers the Court to that agreement and its defined terms for consistency.

insurance agents including Plaintiff Esther Twohill, filed consents to join this litigation. (George Decl., ¶ 5). During litigation, 16 Opt-In's withdrew their consents, leaving 122 total Plaintiffs in this lawsuit. (George Decl., ¶ 5).

Over the next several months, both parties served and responded to written discovery requests. (George Decl, ¶ 7). Plaintiff and Opt-in Plaintiffs responded to 126 sets of individualized interrogatories and requests for production of documents. *Id.* Defendants produced over 6,000,000 pages of documents. *Id.* Plaintiff produced an expert report and Defendants deposed the expert. *Id.* Defendants took the deposition of Plaintiff and eight other Opt-in Plaintiffs. *Id.* Plaintiff took a Rule 30(b)(6) deposition on multiple topics. *Id.* Given the number of documents that had been produced as well as the number of documents that still needed to be produced as well as the depositions remaining, a modification of the Phase II Case Management Order was necessary. *Id.*

On August 14, 2019, Plaintiffs filed a joint motion to amend the Phase II Case Management Order and move the deadlines to allow for essential discovery concerning FAC's defenses. (Doc. 107). The Court granted Plaintiff's motion on August 21, 2019 (Doc. 112). During discovery, FAC produced information regarding each Opt-in Plaintiff's salary, work weeks, weeks during which no work was performed, and clocked hours sufficient to enable Plaintiff, her counsel, and her retained economic expert to fully and fairly value Plaintiff's and the Opt-in Plaintiffs' claims. (George Decl, ¶ 9). Plaintiff and her counsel also conducted a comprehensive investigation and evaluation of the facts

and law relating to the claims asserted in the Lawsuit, including interviewing Opt-in Plaintiffs regarding their work hours, education and training, and job duties. (George Decl, ¶ 10).

On October 9, 2019, the parties participated in a full-day mediation with Michael Russell, in Nashville, Tennessee which resulted in the following Settlement Agreement. (George Decl., ¶ 11; Declaration of Nicholas J. Walker, "Walker Decl.", attached as Exhibit 3, ¶ 5). In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, Plaintiff and her counsel believe this Settlement Agreement is in the best interests of Plaintiff and each of the Opt-in Plaintiffs and represents a fair, reasonable, and adequate resolution of the claims in the Lawsuit. (George Decl., ¶12). Defendants denied and continue to deny Plaintiff's allegations in the Lawsuit. Nonetheless, without admitting any liability or responsibility for damages, Defendants have agreed to settle the Lawsuit on the terms and conditions set forth in their Agreement to avoid the burden, expense, and uncertainty of continuing litigation.

## II.   <u>SETTLEMENT AGREEMENT TERMS.</u>

The Settlement Agreement is attached hereto as Exhibit 1, and the Court is respectfully referred thereto for the complete terms and conditions of the settlement. However, by way of summary, the key settlement terms include:

- Defendants shall remit a Gross Settlement Fund amount equal to $350,000;

- the attorneys' fee portion of the Gross Settlement Fund amount will be equal to the sum of $115,000 (e.g. 32.85%);

- the costs and expenses portion of the Gross Settlement Fund amount will be equal to the sum of $62,622.16;

- the FLSA Collective Members will release their federal, state, and local misclassification claims though the Effective Date, subject to Court approval;

- the Net Settlement Fund (Gross Settlement Fund, minus Attorneys' Fees and Costs, Service Payment, and Administrative Costs) will be divided pro rata amongst the FLSA Collective Members based upon an equitable points system, accounting for each Member's average weekly salary and number of eligible FLSA Workweeks;

- lead Plaintiff Esther Twohill will receive a Service Payment in the amount of $7,500 for the work she performed litigating this case on behalf of the collective;

- Opt-in Plaintiffs Angela Stone, Anthony Ferraro, Bruce Bennett, Christie Gray, Christina Thomas, Gladys Penilla, Steve Richards, and Terrence Schnebel will each receive a service payment in the amount of $2,000 for the work they performed litigating this case on behalf of the collective;

- Defendants shall pay the mediator's fee for the services provided by the mediator;

- this action shall be dismissed, with prejudice.

## III.  ARGUMENT.

### A.  <u>This Court Should Approve The Parties' Settlement.</u>

An FLSA collective action is not a class action – individuals participating affirmatively choose to be bound and represented by counsel, and there are no absent class members whose claims are being settled. *See Digidio v. Crazy Horse Saloon and Restaurant*, 880 F.3d 135 (4th Cir. 2018). Thus, the reasons for judicial scrutiny of class action settlements are not present in FLSA opt in settlements, because absent class members are not bound by the case's outcome. *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972). Unlike settlements under Rule 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

Nonetheless, courts have held that settlement of FLSA claims, in order to effectuate a release, must be presented to the district court for review and determination whether the settlement is fair and reasonable. *Steele v. Staffmark Investments, LLC,* 172 F.Supp.3d 1024, 1031 (W.D. Tenn. 2016). In *re: Dollar General Stores FLSA Litigation*, 5:09-MD-1500, 2011 WL 3904609 *2 (E.D.N.C. Aug. 22, 2011); *Wagner*, 76 F.R.D. at 23. For the

Court to approve a FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties. The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness. And the settlement agreement must contain an award of reasonable attorneys' fees. *Id*.; *see also*; *Porter v. W. Side Rest., LLC*, No. 13-1112-JAR-KGG, 2015 WL 685855, at \*1 (D. Kan. Feb. 18, 2015) (citing *Peterson v. Mortgage Sources, Corp*., No. 08-2660-KHV, 2011 WL 3793963, at \*4 (D. Kan. Aug. 25, 2011) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)); *Thompson v. United Stone*, *LLC*, No. 1:14-CV-224, 2015 WL 867988, \*2 (E.D. Tenn. Mar. 2, 2015).

The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA. *Williams v. Bevill,* No. 4:14-cv-82, 2016 WL 773230, \* 1 (E.D. Tenn. Feb. 8, 2016)(citing *Lynn's Food Stores,* 679 F.2d at 1352-54). First, the court must be satisfied that the settlement was the product of "contested litigation." *Lynn's Food Stores,* 679 F.2d at 1353. Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of

encouraging settlement of litigation. *Id.* Based upon the contested nature of this case and the quality of the settlement, Plaintiff respectfully submits that this Court should conclude that the parties' settlement is a reasonable arms-length resolution of a *bona fide* dispute in contested litigation, and thus approve the settlement.

### 1. The Proposed Settlement Is The Product Of Contested Litigation.

Unquestionably, the proposed settlement is the product of contested litigation. *See* Docket Sheet. In her Complaint, Plaintiff made detailed, factual allegations describing Defendants' allegedly unlawful compensation practices. Defendants filed their Answer denying all of Plaintiff's material factual allegations and asserting an array of affirmative defenses that it argued would bar Plaintiff's claims in whole or in part.

The parties conducted extensive factual investigations regarding the issues raised in Plaintiff's Complaint and Defendants' Answer. Plaintiff's counsel interviewed dozens of Defendants' current and former employees, compared their findings, reviewed voluminous documents, and analyzed their pay and time records. (George Decl., ¶ 13). Similarly, Defendants analyzed their records and interviewed its own witnesses to evaluate the veracity of Plaintiff's allegations and presented its own competing calculations to negate Plaintiff's claims. (George Decl., ¶ 14). Plaintiff Esther Twohill and eight Opt-in Plaintiffs appeared for depositions, as well as Defendants' own 30(b)(6) corporate representative, Scott Kitchen. The parties also undertook considerable legal analysis of the various issues implicated in this case, including, but not limited to, fully analyzing the issues pertaining to FLSA conditional certification and the application of various FLSA exemptions to the

facts of this case.   (George Decl., ¶ 15). Indeed, during the course of litigation, the parties exchanged and discussed the caselaw that each party felt was relevant to this matter. (George Decl., ¶ 16).

The settlement of this lawsuit occurred during a hard-fought mediation which commenced at 9:30 a.m. and finished around 4:30 p.m.  (Walker Decl., ¶ 6).  That is, the parties were only able to reach an agreement after a full day of mediated negotiations.  *Id.* The mediation followed informal negotiations between the parties, which took place over the preceding year.  (George Decl., ¶ 18).  Before the settlement, the parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue.  (George Decl., ¶ 19). Accordingly, this Court should readily conclude that the proposed settlement was the product of contested litigation.

> **2.    The Settlement Fairly and Reasonably Resolves A Bona Fide Dispute.**

This settlement is the product of arm's-length negotiations by experienced counsel and provides significant monetary relief to Plaintiff and all Collective Members. It also eliminates the real, inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002)

("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was hard fought and settled only after numerous contested motions, including conditional certification and Defendants production of over 6,000,000 pages of documents, including but not limited to electronic pay and time records, personnel records, e-mails, and documents containing key search terms designed to retrieve communications relating to the allegations in this case. (George Decl., ¶ 20). The parties also served and responded to written discovery. Indeed, Plaintiffs responded to 126 sets of individualized interrogatories and requests for production for each Opt-in Plaintiff. (George Decl., ¶ 21). In addition to the written discovery, Plaintiff's counsel spoke with dozens of putative opt-in plaintiffs regarding their work experiences and unpaid overtime claims. (George Decl., ¶ 22; Walker Decl., ¶ 4).

Serious questions of fact and law placed the ultimate outcome of the litigation in doubt. Plaintiffs claimed, among other things, that the work duties they performed did not meet the Executive, Administrative, Outside Sales or Retail Service Establishment exemptions to the FLSA's overtime provisions, while Defendants contended the opposite. Both sides ran the risk that summary judgment motions would be denied and that each side

would have to persuade a jury that the evidence concerning the Plaintiff's job duties supported their position on these exemptions. Each side would potentially also need to persuade a jury as to the level of "judgment and independent discretion" used by the Plaintiffs in performing these multiple and varying duties. Additionally, because FAC reclassified its insurance agents in May 2016, much of the damages sustained by the Opt-in Plaintiffs occurred outside of the FLSA's two-year statute of limitations, requiring Plaintiffs to prove FAC's wage violations were willful and therefore subject to the FLSA's three-year limitations period. In addition, there was a dispute concerning the number of overtime hours actually worked by the Plaintiffs. Indeed, Defendants had the Opt-in Plaintiffs clock-in and clock-out during the time period at issue. Plaintiffs argued that they were told not to clock more than 40 hours per week, but Defendants disagreed. This would have obviously resulted in a credibility determination by any fact finder. Therefore, both substantive and procedural disputes created obstacles in the litigation.

The settlement offers significant payments to Plaintiff and the FLSA Collective Members now. (George Decl., ¶ 23). Under the settlement formula, the FLSA Collective Members will each receive an average payment of $1,144 based on an equitable formula that takes into account each Collective Member's number of weeks worked and average salary. *Id.* This amounts to an average of 133 hours of overtime premium pay per Collective Member. (George Decl., ¶ 23).[2]

---

[2] The settlement payments to Collective Members reflects a compromise: it is not an

This is significant and meaningful relief warranting settlement approval. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA coverage and approve the settlement.

### B.     This Court Should Approve the Requested Service Awards.

The parties' Settlement Agreement provides for a Service Payment of $7,500 for named Plaintiff Esther Twohill, who provided invaluable service to Collective Counsel

---

admission by Plaintiffs that this is all the wages they are owed, and it is not an admission by Defendants that it owes any back wages at all.

and, ultimately, the Collective Members. (George Decl., ¶ 25). Plaintiff Esther Twohill has worked with Collective Counsel for approximately three years both before and throughout this litigation, to pursue these claims on behalf of Collective Members. (George Decl., ¶ 26). Ms. Twohill provided necessary evidence for the Court in support of the conditional certification motion, and assisted Counsel in the lengthy discovery process to prepare for the mediation. (George Decl., ¶ 27) Plaintiff Twohill responded to written discovery requests, appeared for an out-of-state deposition, and served as a contact person for Collective Members requesting updates and information about the status of this lengthy litigation. (George Decl., ¶ 28). She educated Collective Counsel on many of Defendants' documents, policies, and practices, and this service enabled Collective Counsel to direct its discovery efforts and, in turn, obtain the best settlement result possible for all Collective Members. (George Decl., ¶ 29). The requested payment rewards Plaintiff for her service to the Collective as a whole, which we estimate required over 100 hours of time. (George Decl., ¶ 30). Without Plaintiff stepping forward to put her name on the lawsuit and her assistance over the course of nearly three years, it is unlikely that any recovery would have been as beneficial to the group. *Id.*

The parties' Settlement Agreement also provides for a Service Payment of $2,000 each for Opt-In Plaintiffs Angela Stone, Anthony Ferraro, Bruce Bennett, Christie Gray, Christina Thomas, Gladys Penilla, Steve Richards, and Terrence Schnebel, who also provided service to Collective Counsel and, ultimately, the Collective Members. (George

Decl., ¶ 31). These 8 Opt-in Plaintiffs answered written discovery in addition to taking two days off of work to travel to Nashville Tennessee, meet with Plaintiffs' counsel, and attend their deposition. (George Decl., ¶ 32). The requested payment rewards each Opt-In Plaintiff for his or her service to the Collective as a whole, which we estimate required over 20 hours of time. (George Decl., ¶ 33). Without agreeing to do so, Plaintiffs could not have obtained this result.

District Courts recognize that the time and dedication an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical Collective member is receiving. *See, e.g., McLaurin v. Prestage Foods Inc.*, 2011 WL 13146422 *4 (E.D.N.C. September 11, 2011) (approving service awards of $10,000 and $5,000 to lead Plaintiffs); *see also*, *Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 (W.D. Okla. 1993) (awarding $10,000 service award to each of three collective representatives); *Kamp v. The Progressive Corp.*, 2004 WL 2149079 (E.D. La. 2004)) (approving up to $10,000 in service awards to collective representative and other plaintiffs); *Salinas v. U.S. Xpress Enterprises, Inc.*, 1:13-cv-245, 2018 WL 1475610, (E.D.Tenn. Mar. 26, 2018)(approving special masters' proposed service award of $10,000 to named plaintiff and $500.00 to opt-in plaintiffs who were deposed).

In fact, District Courts often approve higher service awards in the context of class and collective action litigation. *See Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL

5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for the three collective representatives); *see also Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000). Accordingly, this Court should approve the modest Service Payments requested in this case as a reward for Plaintiff's and the Opt-in Deponents' contributions to the case and to the Collective recovery as a whole.

**C.    The Attorneys' Fees and Expenses Requested Are Reasonable And Warrant This Court's Approval.**

Plaintiff seeks an award of $115,000 of the Gross Settlement Fund ($350,000.00) as attorneys' fees, plus their costs and expenses of $62,622.16, which includes the out-of-pocket costs to administer conditional certification notice to the putative opt-in plaintiffs in this case as well. Though an award of attorneys' fees in an FLSA settlement is mandatory, the Court has discretion to determine the reasonableness of the fee amount. *See Lynn Food Stores,* 679 F.2d at 1354.

Considering percentage fees awarded in other common fund cases, and also applying the *Johnson v. Georgia Highway Express, Inc.* factors explained below, the fee Plaintiff seeks in this case is abundantly reasonable and warrants this Court's approval.

### 1.    One-Third Of The Common Fund Is A Reasonable Fee.

Under the FLSA, prevailing plaintiffs are entitled to recover their reasonable attorneys' fees. *See* 29 U.S.C. § 216(b). In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee:

"A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following this guidance, the parties agreed that Plaintiff's Counsel would receive $115,000 (e.g. 32.85%) of the Settlement Fund as attorneys' fees, plus reimbursement of out-of-pocket costs and expenses.

The percentage of the fund that counsel seeks here falls squarely within the range this District and others have approved in other FLSA cases. *See*, *e.g.*, *Salinas v U.S. Express Enterprises Inc.*, 1:12-cv-00245, 2018 WL 1477127 at *11 (E.D. Tenn. Mar. 8, 2018). (concluding that a fee request that was 40% of the total settlement amount came within the range approved by this District and charged by counsel in other matters); *see also Bruner v. Sprint/United Management Co.*, No. 07-2164, 2009 WL 2058762, *8 (D. Kan. July 14, 2009)(noting the same about the requested fee award, which was 33% of the common fund); *Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) (also approving fee award equal to 33% of the common fund).

Accordingly, an award of 32.85% of the common fund or $115,000 plus out-of-pocket costs and expenses is abundantly reasonable in this case.

### 2. The Requested Fee Is Also Reasonable Under *Johnson*.

Other factors that Courts consider in determining the reasonableness of an attorneys' fee award include the following twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974): (1) time and labor required; (2) novelty

and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and the results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. Applying these factors here confirms the reasonableness of the requested fee.

- *Johnson* Factor 1: Time and Labor Involved

This case required Collective Counsel to expend significant time and labor in pursuing these claims and the amount of fees sought is actually less than Collective Counsel's lodestar fee. Specifically, Collective Counsel have litigated the claims in this case for more than three years and invested over 1,000 hours working on this case with no assurance of any recovery at all. (George Decl., ¶ 34; Billing Summary, attached as Exhibit 4). These hours include time spent investigating the facts of this case; interviewing opt-in plaintiffs regarding their work experiences; gathering declarations in support of conditional certification; briefing the conditional certification motion; briefing individualized discovery; administering notice to putative opt-in plaintiffs; conducting discovery of and analyzing complete pay and time records for all opt-in plaintiffs; retaining and working together with an expert to creating a damage model and performing damages calculations

for all opt-in plaintiffs in preparation for mediation; participating in mediation; drafting

and responding 126 sets of individualized written discovery requests, including identifying

and negotiating ESI search terms which resulted in production of over 6,000,000 pages of

electronic documents; negotiating a settlement favorable to all Collective Members;

devising a settlement allocation formula to ensure an equitable distribution of funds; and

drafting the Settlement Agreement and approval papers. (George Decl., ¶ 35).

And, while Courts have applied a "lodestar cross-check" to determine whether fees

sought are reasonable, Collective Counsel are seeking *less* than their lodestar with this

settlement. As of the filing of this application, Collective Counsel's lodestar is

approximately $554,265.00 at their standard hourly rates.[3]  (George Decl., ¶ 36; Billing

Summary, Ex. 4).  However, with this settlement, Collective Counsel only seeks to recover

$115,000, resulting in a 79% reduction of Collective Counsel's lodestar and a blended

hourly rate of only $112/hour, which is well below the rates regularly approved in FLSA

cases.  *See*, *e.g.*, *Monroe v. FTS USA, LLC,*  2:08-cv-0211, 2014 WL 4472720, *12-13

(W.D.     Tenn.     July     28,     2014)     (approving     rates     up     to     $600/hour);

---

[3] Tracey George's rate for FLSA class and collective work is $575.00/hr., Rowdy Meeks'
Rate for class and collective work is $675.00/hour.  Brett Davis' rate for FLSA class and
collective work is $675.00/hour.  Chuck Yezbak's rate for FLSA class and collective work
is  $560.00/hour.    Nicholas  Walker's  rate  for  FLSA  class  and  collective  work  is
$475.00/hour.    (George Decl., ¶ 36; Declaration of Rowdy B. Meeks, "Meeks Decl.",
attached as Exhibit 5, ¶ 10; Declaration of Charles P. Yezbak, "Yezbak Decl.", attached as
Exhibit 6, ¶ 5).  However, Collective Counsel has agreed to seek less than their lodestar
fees in order to secure a favorable settlement for Plaintiff and the Collective Members.

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) (approving FLSA settlement and holding that Ms. George's and co-counsel's standard hourly rates of $575 and $400, respectively, "fall within what the court observes to be the prevailing market rates in the relevant community for this type of work."); *Personhuballah v. Alcorn*, 239 F. Supp. 3d 929, 948 (E.D. Va. 2017) (approving rates of $575 for senior partners, $390 to $410 for senior associates, and $310 to $345 for junior associates), *vacated and remanded on other grounds*, *Brat v. Personhuballah*, 883 F.3d 475 (4th Cir. 2018).

The fees sought by Collective Counsel are certainly reasonable considering that courts routinely approve multipliers above and beyond the lodestar as reasonable fee awards in collective cases. *See*, *e.g.*, *In re Bank of Am. Wage & Hour Emp't Litig.*, 2013 WL 6670602, at *3 (approving a fee award representing a 1.10 multiplier of the lodestar); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding that percentage fee award resulting in a lodestar multiplier of 1.18 was "imminently reasonable" based on counsel's risks associated with taking the case); *Koehler*, 2016 WL 3743098, at *6 (approving fee award equivalent to 1.3 times the Court's determined lodestar amount as reasonable).

As such, given that Plaintiff seeks to recover significantly less than Collective Counsel's time and labor invested in this case, this factor weighs heavily in favor of approving the fee as reasonable. It is important to remember that this is Collective

Counsels' only opportunity to be awarded fees for the work on this case. However, their work to administer the settlement will continue after this application without any compensation. (George Decl., ¶ 38). As an example, there will be inquiries from the Collective Members regarding the terms and consequences of the settlement and the computation and payout of the settlement. Counsel will perform this work without any additional compensation. *Id.*

- *Johnson* Factor 2: Novelty and Difficulty of Question Presented

FLSA collective actions are both procedurally and substantively complex. By definition, off-the-clock work is not recorded. This presents unique evidentiary hurdles to establishing both liability and damages in a case such as this. In seeking to determine the proper amount of unpaid overtime, nearly every document prepared by or reviewed by Plaintiffs was potentially relevant as evidence of the work they performed. Moreover, Defendants contended that the applicability of the FLSA exemption in this case turned, in part, on the type and amount of work done outside the office, the type of work done inside the office; and the level of and frequency of independent judgment and discretion exercised by each Plaintiff. This required Collective Counsel to analyze, through both documents and Collective Member interviews, the nature of the tasks performed by the individual Collective Members as compared to other categories of employees that worked for Defendants. The misclassification issue presented by this case is at least unsettled. There is no caselaw in the Sixth Circuit addressing the applicability of the administrative,

executive, outside sales exemptions to insurance agents.  As such, this factor weighs in favor of approving the fee requested.

- *Johnson* Factor 3: Skill Requisite to Perform Legal Service Properly

Collective Counsels' practices are largely devoted to plaintiff-side FLSA collective actions.  (George Decl., ¶ 39; Meeks Decl., ¶ 7; Yezbak Decl., ¶ 7).  Collective Counsel stay abreast of the changing law to ensure they maximize their clients' recovery in cases pending all across the United States.  (George Decl., ¶ 40). This is because it is a unique niche area of law, the landscape of which changes regularly as a result of growing jurisprudence spanning the entire country.  *Id.*  Due to the nature of FLSA litigation, attorneys handling these cases must also be prepared to make these investments with the very real possibility of ultimately obtaining no attorney fees or recovery of costs expended. This type of risk is outside the scope of risk that most attorneys and firms can and are willing to handle.  (George Decl., ¶ 41).

- *Johnson* Factor 4:  Preclusion of Other Employment

Collective Counsel litigated this case for more than two-and-a-half years.  During that time, the work performed by Collective Counsel placed significant demands on Collective Counsel's time and resources.  (George Decl., ¶ 42).  For example, in anticipation of reviewing the millions of pages of documents that were produced in this case, Collective Counsel turned down other potentially lucrative work.  *Id.*  As Collective

Counsel's ability to take on additional cases during the course of this litigation was limited, this factor weighs in favor of approval.

- *Johnson* Factor 5: Customary Fee

Collective Counsel customarily charges a 40% contingency fee, and that is the fee for which Plaintiff Esther Twohill contracted in this case. However, Collective Counsel has agreed to seek less than a one-third contingency fee with this Settlement Agreement, and this factor weighs in favor of approval. (George Decl., ¶ 43).

- *Johnson* Factor 6: Whether Fee is Fixed or Contingent

As explained for Factor 5, Collective Counsel took this case on a 40% contingency contract. Accordingly, Collective Counsel undertook this litigation with the risk of obtaining nothing if no recovery was obtained for Plaintiff or the Collective. Moreover, Collective Counsel's contingency arrangement required them to invest both time and expenses with no guaranty of recoupment. This factor favors fee approval.

- *Johnson* Factor 7: Time Limitations Imposed

While there were no unusual time limitations imposed by this case, the nature of this complex litigation posed a significant time commitment, as discussed in more detail for Factors 1 and 4 above.

- *Johnson* Factor 8: Amount Involved and Results Obtained

Given the uncertainty in the law concerning the exemptions claimed by FAC and dispute concerning hours clocked and hours worked, Collective Counsel obtained an

excellent result for all Collective Members, as described in detail above and in the accompanying settlement agreement.

- *Johnson* Factor 9: Experience, Reputation and Ability of Attorneys

Collective Counsel have significant experience in litigating FLSA wage and hour cases across the country and enjoy impeccable reputations for success in this area of law. Attorney Tracey George has more than 19 years of legal experience and has served as collective counsel in dozens of FLSA collective actions. (George Decl., ¶¶ 43, 46). Similarly, attorney Rowdy Meeks has more than 26 years of legal experience and has served as collective counsel in dozens of FLSA collective action cases. (Meeks Decl., ¶¶ 5, 8). Attorney Brett Davis has more than 27 years of legal experience and has served as lead counsel in numerous complex cases. (George Decl. ¶ 44). Attorney Nicholas Walker has more than 15 years of legal experience and previously worked as a partner in the some of the most well-known management side employment boutique firms[4] in the country regularly handling complex multi-plaintiff litigation. (George Decl. ¶ 44). Attorney Chuck Yezbak has more than 25 years of legal experience, and has achieved impressive results in numerous wage and hour class and collective cases. (Yezbak Decl., ¶¶ 3, 7). Together, Collective Counsel have recovered many millions of dollars on behalf of FLSA opt-in plaintiffs. (George Decl., ¶ 45; Meeks Decl., ¶ 8; Yezbak Decl., ¶ 7). This factor weighs in favor of fee approval.

---

[4] Littler Mendelson, Ogletree Deakins, and Constangy Prophete.

- *Johnson* Factor 10: Undesirability of the Case

Collective Counsel did not find this case undesirable to prosecute. However, many attorneys are reluctant to take on cases such as this where there is a very real risk of no recovery and the time commitment is significant.

- *Johnson* Factor 11: Nature and Length of the Professional Relationship

As stated above, Plaintiff Esther Twohill engaged Collective Counsel's services over three years ago.

- *Johnson* Factor 12: Awards in Similar Cases

Fee awards of one-third of the common fund are common in FLSA cases, including in misclassification claims. *See, e.g., Barbosa v. National Beef Packing Co. LLC*, No. 12-2311, 2015 WL 4920292, at *11 (Aug. 18, 2015); *Bruner,* 2009 WL 2058762, at *7; *Koehler*, 2016 WL 3743098, at *8; *Barnwell v. Corrections Corp. of Am.*, Order Approving Settlement Agreement, Case No. 2:08-CV-02151-JWL-DJW (D. Kan. Feb. 12, 2009); *Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008); *Burks v. Bi-State Redevelopment*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91 at 3, ¶8 & Doc. 102, p. 4, ¶9); *DeMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580 *8-9 (S.D.N.Y. Aug. 23, 2010); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933 * 7-8 (N.D. Ohio Mar. 8, 2010); *Wolfert v. United HealthGroup, et al.*, Case No. 4:08CV01643-TIA (E.D. Mo. May 5, 2009); *see also*

*Salinas*, 2018 WL 1477127 at *8 (awarding 40%). The prevalence of fee awards of one-third of the common fund in FLSA cases readily supports a fee award of 32.85% of the common fund here.

Applying the *Johnson* factors, Collective Counsels' fee request is reasonable and warrants approval.

### 3. Plaintiff's Request For Costs And Expenses Is Also Reasonable.

An award of reasonable attorneys' costs and expenses is also mandatory under the FLSA. *See* 29 U.S.C. 216. Under the FLSA, this may include "reasonable out of pocket expenses" that go "beyond those normally allowed under Fed. R. Civ. P 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Lamon v. City of Shawnee, Kan.*, 754 F. Supp. 1518, 1524 (D. Kan. 1991) (noting expenses under the FLSA generally include "all reasonable out-of-pocket expenditures" that are not "normally absorbed as part of law firm overhead"), *rev'd* in part on other grounds by 972 F.2d 1145; *Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir. 1997) (observing that expenses such as travel are not "costs" under 29 U.S.C. § 1920, but "are nonetheless reimbursable-but as part of the award for attorneys' fees, because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services.").

Collective Counsel request reimbursement for $62,622.16 in expenses. (George Decl., ¶ 48). These expenses were reasonably and necessarily incurred in the prosecution

of this complex collective case. *Id*. In fact, of these expenses, $6,424.52 was incurred to administer the process of sending notice and opt-in consents to putative plaintiffs to notify them of their opportunity to join this case, more than $17,591 was incurred for e-discovery processing, hosting, and storage of the >6,000,000 pages of documents Defendant produced in this case, and $11,793 was incurred in expert witness fees to calculate damages owed to the opt-in plaintiffs. (George Decl., ¶¶ 47, 49). Accordingly, Plaintiff requests this Court approve Collective Counsels' award of costs and expenses in the amount of $62,622.16.

WHEREFORE, for these reasons, Plaintiff requests this Court's Order approving the parties' Settlement Agreement as fair and reasonable (Ex. 1), including its provision for Plaintiff Esther Twohill's $7,500 service award, service awards of $2,000 for Opt-In Plaintiffs Angela Stone, Anthony Ferraro, Bruce Bennett, Christie Gray, Christina Thomas, Gladys Penilla, Steve Richards, and Terrence Schnebel, and approving an award of attorneys' fees equal to $115,000 (e.g. 32.85% of the Gross Settlement Fund) plus costs and expenses.

Date: March 6, 2020.

Respectfully submitted,

**DAVIS GEORGE MOOK LLC**


*/s/ Tracey F. George*
Tracey F. George, (MO#52361)
Nicholas J. Walker (MO#56825)
Brett Davis (MO#43299)
DAVIS GEORGE MOOK LLC
1600 Genessee, Suite 328
Kansas City, Missouri 64102
Tel:    (816) 569-2629
Fax:   (816) 447-3939
tracey@dgmlawyers.com
www.dgmlawyers.com
*Admitted Pro Hac Vice*

Charles P. Yezbak, III (TN#18965)
YEZBAK LAW OFFICES
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
Tel:    (615) 250-2000
Fax:   (615) 250-2020
yezbak@yezbaklaw.com

Rowdy B. Meeks, (KS#16068)
ROWDY MEEKS LEGAL GROUP LLC
8201 Mission Rd., Suite 250
Prairie Village, Kansas 66208
Tel:    (913) 766-5585
Fax:   (816) 875-5069
rowdy.meeks@rmlegalgroup.com
www.rmlegalgroup.com
*Admitted Pro Hac Vice*

**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of March 2020, I filed this **PLAINTIFF'S UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT, INCLUDING AWARD OF ATTORNEYS' FEES AND COSTS, AND INTEGRATED MEMORANDUM IN SUPPORT** via the Court's CM/ECF system, which affected service on the following counsel of record:

Jonathan O. Harris, TN #021508
Casey M. Parker, TN #033081
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
SunTrust Plaza
401 Commerce Street, Suite 1200
Nashville, TN 37219-2446
Telephone: 615.254.1900
Facsimile: 615.254.1908
Jon.harris@ogletree.com
Casey.parker@ogletree.com

Chris R. Pace
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
Chris.pace@ogletree.com

**Attorneys for Defendants**

 /s/ *Tracey F. George*

**ATTORNEY FOR PLAINTIFF**